**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Linda L. Mooney and Lieselotte
W. Thorpe, on behalf of
themselves and all others
similarly situated,

                  Plaintiffs,                        **MEMORANDUM OPINION
                                                     AND ORDER**
        v.                                           Civil No. 06-545 ADM/FLN

Allianz Life Insurance Company
of North America,

                  Defendant.

_____

Karl L. Cambronne, Esq. and Jeffrey D. Bores, Esq., Chestnut & Cambronne, P.A., Minneapolis, MN; Alan R. Perry, Jr., Esq. and Jason R. Doss, Esq., Page Perry, LLC, Atlanta, GA; and Diane A. Nygaard, Esq., The Nygaard Law Firm, Leawood, KS, on behalf of Plaintiffs.

Lawrence J. Field, Esq. and David A. Applebaum, Esq., Leonard, Street and Dienard, P.A., Minneapolis, MN, on behalf of Defendant.

_____

**I. INTRODUCTION**

On October 11, 2006, oral argument before the undersigned United States District Judge was heard on Plaintiffs Linda L. Mooney ("Mooney") and Lieselotte W. Thorpe's ("Thorpe") (collectively, "Plaintiffs") Amended Motion for Class Certification [Docket No. 45]. In their Amended Complaint [Docket No. 23], Plaintiffs, on behalf of themselves and all other individuals similarly situated, allege that Defendant Allianz Life Insurance Company of North America ("Allianz") fraudulently marketed certain annuity products as providing an "up-front" or "immediate" bonus, when the bonus allegedly was not fully available until years after the products were purchased. Plaintiffs seek recovery on claims of consumer fraud in violation of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. §§ 325F.68-.70, and

unjust enrichment.  For the reasons set forth below, Plaintiffs' Motion for Class Certification is

denied; however, Plaintiffs may renew their motion by submitting supplemental briefing.

## II. BACKGROUND

**A.      Overview of Allianz's Annuities**

     **1.      Characteristics**

Allianz is incorporated under Minnesota law with its principal place of business and

headquarters in Minneapolis, Minnesota.  Am. Compl. ¶ 8; Am. Answer [Docket No. 30] ¶ 8.

Allianz sells annuities, which are insurance products that accumulate value to pay a stream of

income to the policyholder for a fixed period of time or for the remainder of the policyholder's

life.  Larson Decl. [Docket No. 53] ¶ 3.  An overview of some general categories and

characteristics of Allianz's annuities is helpful to an understanding of the specific annuities at

issue in this case.

     **a.      Immediate Versus Deferred Annuities**

Allianz's annuities can be categorized as "immediate" or "deferred."  For an "immediate"

annuity, the policyholder begins to receive the income stream immediately after purchasing the

policy.  Id. ¶ 4.  The policyholder can be said to "annuitize" immediately, meaning the

policyholder surrenders the premium in exchange for a stream of payments.  Am. Compl. ¶ 50.

For a "deferred" annuity, the income stream begins in the future after a deferral period.  Larson

Decl. ¶ 4.  In other words, the policyholder can annuitize a deferred annuity only after the

deferral period.  Am. Compl. ¶ 51.  During the deferral period, the policy gains value on a tax-

deferred basis.  Larson Decl. ¶ 5.

     **b.      Bonus Features**

Allianz's deferred annuities may include a bonus feature. <u>Id.</u> ¶ 7. The bonus is usually a certain percentage of the premium paid within a specified time frame. <u>Id.</u> For example, a $100,000 premium paid on an annuity with a 10% bonus results in a $10,000 bonus. As discussed below, a policyholder may have to satisfy certain conditions to realize the value of the bonus.

### c.    Two-Tiered Annuities

Some of Allianz's annuities, including the ones at issue in this case, can be categorized as "two-tiered." Two-tiered annuities have an Annuitization Value and a Cash Value. <u>Id.</u> ¶ 6. The Annuitization Value equals the premium amount, any bonus credits applied, and any policy value gains. <u>Id.</u> To receive the Annuitization Value, a policyholder must wait the minimum deferral period and choose a payout option listed in the policy (i.e. annuitize). <u>Id.</u> In contrast, the Cash Value equals a certain percentage of the premium paid, and policy value gains accrue at a lower rate of return than for the Annuitization Value. <u>Id.</u> Significantly, bonus amounts are not credited to the Cash Value. <u>Id.</u> The Cash Value is available at any time as a lump sum to the policyholder. <u>Id.</u>

### d.    Equity-Indexed Annuities

Some annuities can be categorized as "equity-indexed." This means that a portion of the return on a policyholder's premium during the deferral period is tied to a stock market index. <u>Id.</u> ¶ 13. Policyholders have some choice regarding how much of their premium to allocate to a specific index. <u>Id.</u>

### 2.    Sales Through Independent Agents

Allianz's deferred annuities are sold through a network of over 150,000 independent

insurance agents.  Id. ¶ 17.  Most of these agents also sell other companies' insurance products.

Id. ¶ 18.  Each agent is affiliated with a Field Marketing Organization, which is responsible for

training its affiliated agents.  Id. ¶¶ 21-22.  Since 2000, Allianz has offered training to agents, in

the form of workshops, conference calls, and web seminars.  Id. ¶ 23.  This training, however, is

voluntary.  Id.  Independent agents selling Allianz's products do not follow a sales script when

engaging with clients.  Id. ¶ 20.  An agent receives a commission for each annuity the agent sells.

Id. ¶ 26.

**B.     The Named Plaintiffs**

     **1.     Linda L. Mooney**

     On April 13, 2005, Mooney met with Mark W. Miller ("Miller"), an independent

insurance agent, for an annual "financial check-up."  Am. Compl. ¶ 10.  At this meeting, Miller

recommended that Mooney surrender an annuity she held with TransAmerica Life Insurance &

Annuity Company ("TransAmerica") and purchase an Allianz MasterDex 10 (the "MasterDex

10") annuity because the MasterDex 10 provided an "up-front" ten percent premium bonus and

could grow in value by its linkage to the S&P 500 market index.  Mooney Dep. (Applebaum

Decl. [Docket No. 52] Ex. E) at 24-27, 34.  Miller told Mooney that the bonus would offset the

surrender charge for surrendering the TransAmerica annuity.  Id. at 27.  By the end of the

meeting, Mooney decided to follow Miller's advice to purchase a MasterDex 10 annuity.  As

part of the sales and application process, Miller provided Mooney with a Consumer Brochure.

Id. at 53-54.  Additionally, Mooney and Miller signed a Statement of Understanding, and

Mooney signed an Application for Annuity.  Id. at 31, 62.  These documents regarding the

purchase are discussed in more detail below.  Mooney paid a premium of approximately

$216,000 on her MasterDex 10 policy.  Mooney Contract Summary (Am. Compl. Ex. 4).

### 2.      Lieselotte W. Thorpe

On August 24, 2005, Thorpe signed a letter stating that she wished to surrender an annuity she had previously purchased with American Investors Life/AmerUs.  Thorpe Dep. (Applebaum Decl. Ex. F) at 17-22.  On the advice of her children, Thorpe intended to use the money to purchase an annuity product from Allianz because she understood that the Allianz annuity offered a larger bonus.  Id.  On August 25, 2005, Thorpe met with Jeffrey W. Goldfine ("Goldfine"), an independent insurance agent.  Id. at 22.  During this meeting, Goldfine told Thorpe she would receive a "10 percent bonus up front" if she purchased MasterDex 10 annuities from Allianz.  Id. at 28.  At the conclusion of the meeting, Thorpe purchased two MasterDex 10 annuities.  Id. at 14-15.  During the meeting, Goldfine provided Thorpe with a Consumer Brochure, Goldfine and Thorpe signed a Statement of Understanding, and Thorpe completed an Application for Annuity.  Id. at 43, 67-69, 73-75.  Thorpe paid premiums of approximately $103,000 and $207,000 on two MasterDex 10 policies.  Thorpe Contract Summaries (Am. Compl. Exs. 8-9).

### C.      Allianz's Alleged Scheme to Defraud

The basic premise of Plaintiffs' case is that Allianz deceptively used representations of an "up-front" or "immediate" bonus to entice individuals to purchase its two-tiered equity-index annuities, such as the MasterDex 10.  Plaintiffs argue this representation was fraudulent because a policyholder must wait a minimum deferral period of five years and then elect to annuitize for ten years to receive the full amount of the bonus.  Thus, Plaintiffs allege, there is no "up-front" or "immediate" bonus.

Mooney and Thorpe's claims rely heavily on alleged misrepresentations in the MasterDex 10 Consumer Brochure.  Additionally, Plaintiffs assert that the Statement of Understanding shows that the same standard written materials are provided to every purchaser, and that the independent insurance agents do not deviate from these documents.

### 1.    MasterDex 10 Consumer Brochure

The MasterDex 10 Consumer Brochure consists of twelve pages of text and illustrations highlighting the features of the MasterDex 10 policy.  See Generic Brochure (Doss. Decl. [Docket No. 47] Ex. 10).[1]  The last page of the Consumer Brochure lists Allianz's Minneapolis mailing address, suggesting that Allianz created and disseminated the Consumer Brochure from its Minnesota headquarters.  Id. at 12.  Plaintiffs allege that a number of statements in the Brochure are misleading and deceptive, such as statements that:

1.    "MasterDex 10 gives you an immediate gain with a 10% premium bonus.  You receive the bonus on your initial premium and any additional premium you submit for the first five years."  Id. at 3.

2.    "MasterDex 10 puts you ahead right from the start, then tracks the market index.  MasterDex 10 gives you an immediate 10% bonus . . . ."  Id. at 4.

3.    "The MasterDex 10 . . . merits your careful consideration if: You would appreciate receiving an up-front bonus to help regain market losses or recoup surrender charges (or if you just plain enjoy getting a bonus!)."  Id. at 11.

Plaintiffs claim these statements are misleading because to realize the full value of the bonus, a policyholder must wait the five-year deferral period and then annuitize the policy for at least ten

---

[1] Although state-specific versions of the Consumer Brochure exist, see Doss Decl. Ex. 9, neither Allianz nor Plaintiffs suggest that the differences are material.  Therefore, the Court focuses on what Plaintiffs refer to as a "generic" version of the Consumer Brochure.  See Mem. in Supp. of Mot. for Class Cert. [Docket No. 46] at 7-8.

years.[2]

The Consumer Brochure indicates that certain conditions must be met to achieve the

bonus.  Footnote One on the second page states:

> If the policy is annuitized prior to the sixth year, if annuity payments are taken for less
> than 10 years, or if the policy is surrendered for cash at any time, then the bonus will be
> forfeited, the index adjustments will be lost, a 12.5% charge will be applied and a rate of
> interest no less than 1.5% will be credited from the inception of the policy.

Id. at 2 n.1.  Additionally, in a question-and-answer format in the Brochure, the following

inquiry and answer is given:

> What if I surrender the policy?  It's possible you may wish to surrender your MasterDex
> 10 for cash.  If so, the amount you receive will be reduced.  You will receive the greater
> of your policy's cash surrender value or its guaranteed minimum value, which is defined
> in your Statement of Understanding.

Id. at 8.  Plaintiffs assert, however, that most individuals overlook these statements and focus on

the "up-front" and "immediate" language mentioned throughout the Brochure.  See Rao Expert

Witness Op. (Cambronne Decl. [Docket No. 48] Ex. D) at 6.

### 2.      MasterDex 10 Statement of Understanding

The MasterDex 10 Statement of Understanding ("MasterDex 10 SOU") is a three page

document that lists significant features of the policy and provides hypothetical illustrations

regarding the policy's performance.  MasterDex 10 SOU (Doss Decl. Ex. 21).[3]  Several items

refer specifically to the bonus.  The first two items under the heading "Annuitization Value"

---

[2] Plaintiffs also allege that the Consumer Brochure's hypothetical illustration of the
MasterDex 10's performance, and the Brochure's definition of "annuitization," are misleading
because important information is omitted.  See Generic Brochure at 6-8.

[3] Although state-specific versions of the MasterDex 10 SOU exist, see Doss Decl. Ex. 8
at 2-3, neither Allianz nor Plaintiffs suggest that differences in the versions are material for
purposes of Plaintiffs' Motion.  Therefore, the Court focuses exclusively on the cited version.

state:

    1.      The Annuitization Value, at issue, is equal to the initial premium plus bonus.  It is increased by any Interim Interest Account additions, any Adjustments, and any Partial Adjustments.  It is decreased by any partial surrenders and any systematic withdrawal of credit payments.

    2.      The Annuitization Value is available only if this policy is annuitized any time after the fifth policy year for a period of at least 10 continuous years.

Id. at 1.  The section labeled "Cash Value" states, in full:

    1.      The Cash Value is equal to 87.5% of premium paid minus any Withdrawals, all accumulated at 1.5% interest, compounded annually.  The Cash Value does not receive premium bonuses and does not receive any interest linked to any indexes.  Under no circumstances will the Cash Value be less than the Guaranteed Minimum Value.

    2.      The Cash Value will be paid if any of the following events occur:
        (a)      annuity payments begin prior to the end of the fifth policy year;
        (b)      annuity payments are made for less than 10 continuous years; or
        (c)      the policy value is surrendered in one lump sum payment.

    3.      The Guaranteed Minimum Value is equal to 75% of premium paid in the first policy year plus 87.5% of premium paid after the first policy year minus any Withdrawals, all accumulated at 3% interest, compounded annually.

Id.  Additionally, the first item under "Surrenders and Withdrawals" states that "[i]f you fully surrender your policy at any time, you will only receive the Cash Value.  You will not receive any premium bonuses or Indexed Adjustments."  Id. at 2.

The MasterDex 10 SOU concludes with a signature section.  Policyholders sign a statement that:

    I have read the information above.  The agent thoroughly explained the information and the examples to me, and has answered any questions I had, and I believe, the MasterDex 10 Annuity may help meet my long term financial goals.  I have also read the MasterDex 10 Annuity consumer brochure . . . I understand that I may return my policy within the free look period (shown on the first page of the policy) if I am dissatisfied for any reason.

Id. at 3.  Insurance agents sign a statement that "I have presented and provided a signed copy of

this disclosure to the owner.  I have not made statements that differ from the disclosure form, and no promises or assurances have been made about the future values of the policy."  Id.

Prior to 2003, Allianz requested signed Statements of Understanding from agents upon delivery of annuity policy contracts.  Larson Decl. ¶ 26.  An agent's commission was not affected, however, if the agent failed to send a signed Statement of Understanding to Allianz.  Id.  In September 2003, Allianz began a practice of retracting an agent's commission if a signed Statement of Understanding is not received within 30 days of a policy's issue date.  Id.

### III. DISCUSSION

**A.   Motion to Certify a Class**

Plaintiffs move to certify the following class:

> All individuals who from February 9, 2000 to the present purchased one of the following two-tiered annuities from Allianz Life Insurance Company of North America: BonusMaxxx, BonusMaxxx Elite, BonusDex, BonusDex Elite, 10% Bonus PowerDex Elite, MasterDex 10, and the InfiniDex 10 ("Annuities").  The Class excludes all persons who purchased the above-listed Annuities from Allianz while they were California residents and when they were 65 or older.

Am. Mot. for Class Cert.[4]  For class certification to be appropriate, the proposed class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P.

---

[4] Neither Allianz nor Plaintiffs suggest that the alleged misrepresentations in the other annuity products at issue differ materially from the alleged misrepresentations in the MasterDex 10 documents.  Therefore, the Court will not separately discuss the other products.

23(a).  In addition to the requirements of Rule 23(a), the proposed class must also fit within one of the three categories of Rule 23(b).

"[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).  However, a motion to certify a class "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (citation and quotation marks omitted).  A district court has discretion in determining whether to certify a class.  See In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).

**B.      Plaintiffs' Claims under the Minnesota Prevention of Consumer Fraud Act**

    **1.      Rule 23(a)**

        **a.      Numerosity**

Although "[n]o arbitrary rules regarding the necessary size of classes have been established," Paxton v. Union Nat'l Bank of Little Rock, 688 F.2d 552, 559 (8th Cir. 1982), the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs assert that the number of annuity policies at issue exceeds 337,000.  Defendants do not dispute this number, or otherwise argue against a finding of numerosity.  Therefore, the Court finds that the proposed class, consisting potentially of hundreds of thousands of individuals, is so numerous that joinder of all members is impracticable.

        **b.      Commonality**

Not every question of law or fact need be common to the class to satisfy the requirements

of Rule 23(a)(2). Instead, Rule 23(a)(2) requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members. Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993). Here, Plaintiffs argue that questions common to the proposed class include, *inter alia*, whether the references to the premium bonus as "up-front" and "immediate" in Allianz's marketing materials constitute a misrepresentation, and whether important information about the bonus was misrepresented or omitted. See Am. Compl. ¶ 106. Defendants do not argue against a finding of commonality. Accordingly, the Court finds there are questions of law or fact common to the class.

### c.    Typicality

"The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995). "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 575 (D. Minn. 1995). Since the typicality inquiry often merges with the commonality analysis, the Eighth Circuit has given typicality an "independent meaning" by holding that Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the [class representative]." Paxton, 688 F.2d at 562 (citation omitted).

### i.    Mooney

Allianz contends that deposition testimony shows that neither Mooney nor Thorpe has claims that are typical of the putative class. Allianz argues that Mooney testified she did not

expect to receive an immediate bonus payment when she purchased the MasterDex 10.  See Mooney Dep. at 48-49.  Based on this testimony, Allianz urges that Mooney fails typicality because she was not misled by claims of an "up-front" and "immediate" bonus.  Allianz also argues that Mooney fails typicality because she could not articulate why a reference in the Consumer Brochure to the bonus was misleading.  See id. at 59.

The Court finds these arguments unpersuasive.  Although Mooney's testimony indicates some confusion and an inability to readily articulate some aspects of her claims, her testimony, read as a whole, shows she believes that Allianz failed to deliver an "up-front" and "immediate" bonus that was marketed to her.  This is the basic premise of the Complaint.  Thus Mooney's claims "emanate from the same event or are based on the same legal theory as the claims of the class members."  Lockwood Motors, 162 F.R.D. at 575 (citation omitted).

### ii.    Thorpe

Allianz argues Thorpe fails typicality because she decided to purchase the MasterDex 10 the day before she met with Goldfine and reviewed the allegedly misleading materials.  As with Mooney, however, the Court finds that Thorpe's claims are typical of the class.  Thorpe's intent to purchase the MasterDex 10 before viewing the marketing materials does not defeat typicality because Thorpe signed the Statement of Understanding and the Application for Annuity after Goldfine presented Allianz's marketing materials to her, and after Goldfine told Thorpe she would receive "a 10 percent bonus up front."  See Thorpe Dep. at 28.

As another ground against a finding of typicality, Allianz cites Thorpe's deposition testimony that the MasterDex 10 Annuitization Value includes the bonus.  See id. at 86-90.  The relevant time frame regarding Thorpe's understanding, however, is not September 2006, when

her deposition was taken, but instead is August 2005, when Thorpe purchased the MasterDex 10 annuity.  The fact that Thorpe now understands that the bonus is part of the Annuitization Value is not dispositive of her understanding at the time she decided to purchase the MasterDex 10.

### d.    Adequacy

In analyzing Rule 23(a)(4), courts should consider "(1) [whether] the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton, 688 F.2d at 562-63.  Because the representatives in a class action "must possess the same interest and suffer the same injury as their fellow class members," it is axiomatic that they must be members of the class they seek to represent.  Roby v. St. Louis Sw. Ry. Co., 775 F.2d 959, 961 (8th Cir. 1985) (citations and quotation marks omitted).

Allianz contends that Mooney is an inadequate class representative because she has not suffered financial injury, as indicated by her statement that she is not seeking compensation for herself in this lawsuit.  Mooney Dep. at 73-75.  Mooney, however, did testify she "would like to initiate financial restitution to everyone who has been adversely affected by this marketing ploy." Id. at 74.  The whole of her testimony demonstrates that she considers herself among those adversely affected, and that she is committed to vigorously prosecuting claims against Allianz on behalf of herself and other class members.  See id.  Therefore, the Court finds Mooney an adequate class representative.

Allianz also states that Thorpe is an inadequate class representative, but it offers no arguments that relate specifically to Thorpe's adequacy.  Here, Thorpe sought counsel to pursue her claims against Allianz, indicating that she is committed to a vigorous prosecution of the

13

claims in the Amended Complaint.  Thorpe Dep. at 93.  The Court finds that Thorpe is an adequate class representative.

Finally, the Court has reviewed the credentials of Plaintiffs' attorneys and finds that they are well qualified to vigorously prosecute claims on behalf of the proposed class.  See Cambronne Decl. Exs. A-C.  Therefore, the Court finds that the named representatives, through their counsel, will fairly and adequately protect the interests of the class.

### 2.      Rule 23(b)

In addition to the requirements of Rule 23(a), a class action must satisfy one of the three categories of Rule 23(b).  Here, Plaintiffs attempt to satisfy Rule 23(b)(3), which requires a court to find (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (predominance), and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (superiority).  Fed. R. Civ. P. 23(b)(3).

### a.      Predominance

### i.      Questions of Fact

The Minnesota Supreme Court established in Group Health Plan, Inc. v. Philip Morris, Inc., 621 N.W.2d 2, 12 (Minn. 2001) that to state a claim under the MPCFA, a plaintiff must plead that (1) "the defendant engaged in conduct prohibited by the statutes," and (2) "the plaintiff was damaged thereby."

### A.      Whether Allianz Engaged in Prohibited Conduct

Plaintiffs assert that class-wide questions of fact predominate over individual questions of fact.  Plaintiffs emphasize that Allianz requires that (1) independent insurance agents present

14

and provide every class member a Consumer Brochure that refers to an "up-front" bonus, (2) every class member signs a statement that she received and read the Consumer Brochure, and (3) every agent verifies that no oral representations differ from the disclosure form (the SOU). Plaintiffs argue these requirements ensure that every policyholder receives the same standardized written materials, and that insurance agents' presentations uniformly portray what Allianz considers to be the essential features of the product regardless of individualized variations in presentations. Thus, Plaintiffs argue that they can establish based on facts consistent among the class members that Allianz engaged in conduct prohibited by the MPCFA.

Although differences exist in state-specific versions of Allianz's marketing materials for the annuity products at issue, Allianz has not suggested that these differences are material. Therefore, class-wide proof is appropriate for determining whether Allianz's marketing materials violated the MPCFA. Thus, the Court finds class-wide questions of fact predominate regarding whether Allianz engaged in conduct prohibited by the MPCFA.

### B.      Whether Allianz's Conduct Injured Plaintiffs

The second prong of this analysis is whether class-wide questions of fact predominate in determining if Allianz's conduct injured Plaintiffs and other potential class members. Under Group Health, a plaintiff must establish a "causal nexus" between her injury and the defendant's wrongful conduct to recover damages under the MPCFA. Group Health, 621 N.W.2d at 13-14. A showing of reliance is necessary to establish a causal nexus. Id. However, "in cases . . . where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers." Id. at 14. In

such cases, "the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct." Id.  As an example of the types of circumstantial evidence that may be relevant, the Group Health court referred to a federal case stating that consumer confusion in cases under a federal statute could be shown through consumer testimony, consumer surveys, consumer reaction tests, or market research.  See id. n.9, citing Lenscrafters, Inc. v. Vision World, Inc., 943 F. Supp. 1481, 1489 (D. Minn. 1996).

Plaintiffs assert they can establish a causal nexus on a class-wide basis based on circumstantial evidence, and therefore the need for individualized inquiry is reduced.  More specifically, Plaintiffs rely on sales data showing that increases in the "up-front" bonus percentage increased Allianz's sales of its annuity products, and on expert witness testimony that class members were psychologically influenced by the Consumer Brochure's references to an "up-front bonus" to infer they would receive more benefits than Allianz's annuities actually provided.

Allianz argues, however, that individualized inquiry is necessary to establish whether each potential class member can show a causal nexus between Allianz's alleged MPCFA violation and damages to the class member.  In particular, Allianz suggests that (1) some purchasers could have read the marketing materials and understood how the bonus worked; (2) some purchasers may not have read the marketing materials; (3) the marketing materials highlight features other than the bonus, and purchasers may have bought the annuities for those other features rather than for the bonus; (4) independent insurance agents' oral communications

differ in explaining how the bonus works; (5) Allianz may have sale-specific defenses based, *inter alia*, on the circumstances of a sale and the individual characteristics of a purchaser; and (6) not all purchasers will suffer the injuries Plaintiffs claim they have suffered.

In support of its arguments, Allianz cites a number of cases involving insurance products where class certification was denied based on material variations in the written or oral sales presentations.  See, e.g., Moore v. PaineWebber, Inc., 306 F.3d 1247, 1255-56 (2d Cir. 2002); In re LifeUSA Holding, Inc., 242 F.3d 136, 146-47 (3d Cir. 2001).  The Third Circuit's opinion in In re LifeUSA can be read to suggest that certification of a class based on fraud claims requires a "uniform, scripted, and standardized sales presentation," with uniform written scripts for oral communications and uniform training of sales agents.  See In re LifeUSA, 242 F.3d at 146-47. The Second Circuit has cautioned, however, that "[w]hile training and the existence of scripts are relevant factors, the inquiry should remain focused on whether material variations in the misrepresentations existed.  No particular form of evidentiary proof is mandated." Moore, 306 F.3d at 1255.  Allianz argues these cases are authority that Plaintiffs have not satisfied the predominance prong of Rule 23(b) because of material differences in independent agents' sales presentations of Allianz's annuities.

However, these authorities do not apply the MPCFA.  The Group Health court interpreted the MPCFA to relax the strict showing of individual reliance required at common law.  Group Health, 621 N.W.2d at 14.  If this Court were to accept Allianz's arguments, it is unlikely any class of purchasers of insurance products could ever be certified under the MPCFA, since individualized inquiry into the causal nexus requirement would always be necessary due to the possibility of differences in characteristics of the purchasers or in the presentations of their

sales agents.  In essence, Allianz's arguments would add a strict showing of individual reliance

back into the MPCFA.  Under <u>Group Health,</u> such a showing is unnecessary.  At this stage in the

litigation, the Court finds that Plaintiffs may prove a causal nexus on a class-wide basis based on

direct and circumstantial evidence that policyholders were misled to their detriment by the

overall effect of the written and oral presentations of Allianz's annuities.  Such evidence could

include consumer testimony, expert witness testimony, consumer surveys, and market research.[5]

Because the causal nexus showing is susceptible to class-wide proof, the Court finds that class-

wide questions of fact predominate regarding both required elements of Plaintiffs' MPCFA

claims.[6]

### ii.      Questions of Law

The next factor in the predominance inquiry is whether class-wide questions of law

predominate.  Allianz asserts that Plaintiffs have not provided a conflicts-of-law and choice-of-

law analysis supporting application of the MPCFA to each proposed class member's claim.

Allianz argues that such an analysis is required under the Eighth Circuit's opinion in <u>St. Jude,</u>

and therefore Plaintiffs' failure to provide such an analysis defeats class certification because

---

[5] It is doubtful, however, that Plaintiffs' sales data alone can suffice.  Evidence that increases in the bonus percentage led to an increase in sales of Allianz's annuities does not, by itself, show that policyholders relied on the alleged misrepresentations.  Plaintiffs' direct and circumstantial evidence must show that the increased sales were due to the allegedly misleading representations, as opposed to the increase in the bonus percentage.

[6] Other courts have reached the same conclusion on analogous facts.  <u>See</u> <u>Iorio v. Asset Mktg., Inc.,</u> No. 05-633 (S.D. Cal. July 25, 2006) (certifying class action of certain California residents regarding same annuities at issue in the instant case); <u>In re Lutheran Bhd. Variable Ins. Prods. Co. Sales,</u> 201 F.R.D. 456 (D. Minn. 2001) (certifying class action regarding MPCFA claims); <u>Castello v. Allianz Life Ins. Co. of N. Am.,</u> No. 03-20405 (Minn. Dist. Ct. Sept. 1, 2005) (same).

individual questions of law may predominate.  In response, Plaintiffs argue that St. Jude does not require such an analysis.  Plaintiffs urge that a conflicts-of-law and choice-of-law analysis is unnecessary because each policyholder has a sufficient connection to Minnesota for the MPCFA to apply,[7] and because the MPCFA was intended to have extraterritorial application.

Plaintiffs' argument, however, cannot prevail given the holding of St. Jude, the controlling precedent of this Circuit.  There, the proposed class's claims were based on problems with a prosthetic heart valve that St. Jude, a Minnesota corporation, manufactured in Minnesota. St. Jude, 425 F.3d at 1118-19.  In certifying a nationwide consumer protection subclass, the District Court concluded that Minnesota's consumer protection statutes would apply to each proposed class member's claims.  Id. at 1119.  On appeal, the Eighth Circuit reversed and remanded, holding that the Federal Constitution's Due Process and Full Faith and Credit Clauses required "a thorough conflicts-of-law analysis with respect to each plaintiff class member before applying Minnesota law."  Id. at 1120.  Although Minn. Stat. § 8.31 permits "any person" injured by a violation of the MPCFA to bring suit, the Eighth Circuit stated that "[s]tate consumer protection standing statutes do not extinguish federal constitutional rights or relieve courts from performing the analysis required to safeguard those rights."  Id. at 1121.

Plaintiffs attempt to distinguish St. Jude based on the language in the opinion that "[t]here is no indication out-of-state parties 'had any idea that [Minnesota] law could control' potential claims when they received their Silzone-coated valves."  Id. at 1120, quoting Phillips

---

[7] Plaintiffs rely on the fact that the annuity marketing materials list Allianz's Minnesota address, that the annuity marketing materials were approved and disseminated from Allianz's Minnesota headquarters, and that every policyholder mailed premium checks to Allianz in Minnesota.

Petroleum Co. v. Shutts, 472 U.S. 797, 822 (1985).  Using this language, Plaintiffs argue the

instant case is distinguishable because purchasers of Allianz's annuities are more likely to be

aware that Minnesota law could control than were the proposed class members in St. Jude.[8]

Plaintiffs' distinction, however, loses force when the quoted excerpt is read in conjunction with

the sentence that immediately follows:

> There is no indication that out-of-state parties 'had any idea that [Minnesota] law could
> control' potential claims when they received their Silzone-coated valves.  *Regardless*,
> protection of out-of-state parties' constitutional rights requires an inquiry into their
> claims' contacts with Minnesota and their individual state laws before concluding
> Minnesota law may apply.

St. Jude, 425 F.3d at 1120 (citation omitted) (emphasis added).  Thus, St. Jude requires a

conflicts-of-law inquiry regardless of whether out-of-state class members were aware that

Minnesota law could control adjudication of claims arising out of their purchases of Allianz's

annuities.

Plaintiffs also suggest that St. Jude was "remanded for a constitutional analysis that

included a comparison of state laws, not for a state choice-of-law analysis."  Reply Mem. in

Supp. of Mot. for Class Cert. [Docket No. 63] at 6.  This argument also fails, because it is

squarely at odds with the text of the St. Jude opinion: "[T]he district court should have

conducted the proper choice-of-law analysis, and we reverse and remand for that analysis."  St.

Jude, 425 F.3d at 1121 (citation omitted).  Attempting to circumvent this language, Plaintiffs cite

a number of pre-St. Jude cases for the proposition that a Minnesota court would apply the

---

[8] Specifically, Plaintiffs argue the St. Jude class members neither purchased their valves
directly from St. Jude nor did they shop for them based on advertising that disseminated from
Minnesota, whereas in the instant case, the proposed class members purchased directly from a
Minnesota corporation based on marketing materials approved and disseminated from
Minnesota.

MPCFA to Plaintiffs' claims without conducting a conflicts-of-law analysis. Cases preceding <u>St. Jude</u> are of limited value, however, as <u>St. Jude</u> clearly requires a conflicts-of-law analysis and is binding precedent on this Court. Moreover, on remand in <u>St. Jude</u>, District Judge John R. Tunheim performed a conflicts-of-law and choice-of-law analysis before concluding that the MPCFA could apply to a nationwide subclass. <u>In re St. Jude Med.</u>, MDL No. 01-1396, 2006 U.S. Dist. LEXIS 74797, at *12-20 (D. Minn. Oct. 13, 2006).

Here, Plaintiffs have not analyzed whether conflicts exist between other states' consumer protection laws and the MPCFA. Therefore, under the Eighth Circuit's decision in <u>St. Jude</u>, this Court cannot certify the proposed class at this time. Thus, Plaintiffs' Motion for Class Certification is denied regarding Plaintiffs' MPCFA claims. However, the Court will grant Plaintiffs the opportunity to renew their Motion regarding the MPCFA claims by submitting supplemental briefing.

### b.    Superiority

Under Rule 23(b)(3), a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Since the superiority analysis will be influenced by whether class-wide or individual questions of fact predominate, the Court will address superiority after briefing on conflicts-of-law and choice-of-law issues.

## C.    Plaintiffs' Unjust Enrichment Claims

To prevail on a claim of unjust enrichment under Minnesota law, Plaintiffs must prove that Allianz "knowingly received something of value it was not entitled to and under circumstances that would make it unjust to keep." <u>Guinness Import Co. v. Mark VII Distribs., Inc.</u>, 153 F.3d 607, 613 (8th Cir. 1998). "Unjust" can mean illegal or unlawful, or that it is

morally wrong to allow one party to benefit at the expense of another.  <u>Gallinger v. N. Star Hosp.</u>
<u>Mut. Assurance, Ltd.</u>, 64 F.3d 422, 426 (8th Cir. 1995).

Here, Plaintiffs' unjust enrichment claims are premised on the same legal theory and
facts as their claims under the MPCFA.  Accordingly, the Court finds that its class certification
analysis regarding Plaintiffs' MPCFA claims also applies to Plaintiffs' unjust enrichment claims.
Therefore, Plaintiff's Motion for Class Certification is also denied regarding Plaintiffs' unjust
enrichment claims.  Plaintiffs may renew their motion as to the unjust enrichment claims by
submitting supplemental briefing.

### IV.  SUPPLEMENTAL BRIEFING SCHEDULE

Plaintiffs are afforded 30 days from the date of this Order to submit supplemental
briefing providing a conflicts-of-law and choice-of-law analysis regarding the application of the
MPCFA and Minnesota's common law of unjust enrichment on a class-wide basis.  Allianz may
respond within 20 days after Plaintiffs file their supplemental brief.  No reply brief is permitted
unless Plaintiffs make a showing of necessity by letter to the Court.  The word limit set forth in
Local Rule 7.1(c) shall apply.  Upon review of the submissions, the Court will decide if oral
argument would be helpful.

## V. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.     Plaintiffs' Amended Motion for Class Certification [Docket No. 45] is **DENIED**;

2.     Plaintiffs are granted 30 days from the date of this Order to renew their Motion by submitting additional briefing regarding conflicts-of-law and choice-of-law issues;

3.     Defendant may submit a response within 20 days of the filing of Plaintiffs' brief; and

4.     The word limit set forth in Local Rule 7.1(c) shall apply to the supplemental briefing.

BY THE COURT:


s/Ann D. Montgomery

_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 12, 2007