UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Linda L. Mooney and Lieselotte
W. Thorpe, on behalf of
themselves and all others
similarly situated,

             Plaintiffs,             **MEMORANDUM OPINION
AND ORDER**
v.             Civil No. 06-545 ADM/FLN

Allianz Life Insurance Company
of North America,

             Defendant.

---

Karl L. Cambronne, Esq. and Jeffrey D. Bores, Esq., Chestnut & Cambronne, P.A., Minneapolis, MN; Alan R. Perry, Jr., Esq. and Jason R. Doss, Esq., Page Perry, LLC, Atlanta, GA; and Diane A. Nygaard, Esq., The Nygaard Law Firm, Leawood, KS, on behalf of Plaintiffs.

Lawrence J. Field, Esq. and David A. Applebaum, Esq., Leonard, Street and Deinard, P.A., Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On October 11, 2006, oral argument before the undersigned United States District Judge was heard on Plaintiffs Linda L. Mooney ("Mooney") and Lieselotte W. Thorpe's ("Thorpe") (collectively, "Plaintiffs") Amended Motion for Class Certification [Docket No. 45]. On January 12, 2007, this Court issued an Order ("January 12 Order") [Docket No. 70] denying Plaintiffs' Motion but granting Plaintiffs leave to renew their Motion after supplemental briefing. Plaintiffs and Defendant Allianz Life Insurance Company of North America ("Allianz") have submitted supplemental briefing, and Plaintiffs have filed a Renewed Motion for Class Certification [Docket No. 75]. For the reasons set forth below, Plaintiffs' Renewed Motion for Class Certification is granted.

## II. BACKGROUND

The background of Plaintiffs' claims is set forth in the January 12 Order and is incorporated herein by reference. In essence, Plaintiffs' Amended Complaint [Docket No. 23] alleges that Allianz fraudulently marketed certain annuity products as providing an "up-front" or "immediate" bonus, when the bonus was not fully available until years after the products were purchased. Plaintiffs assert claims of consumer fraud in violation of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. §§ 325F.68-.70, and unjust enrichment under Minnesota common law. Plaintiffs seek certification of the following class:

> All individuals who from February 9, 2000 to the present purchased one of the following two-tiered annuities from Allianz Life Insurance Company of North America: BonusMaxxx, BonusMaxxx Elite, BonusDex, BonusDex Elite, 10% Bonus PowerDex Elite, MasterDex 10, and the InfiniDex 10 ("Annuities"). The Class excludes all persons who purchased the above-listed Annuities from Allianz while they were California residents and when they were 65 or older.

Am. Mot. for Class Cert.

In the January 12 Order, this Court found that the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) were satisfied regarding Plaintiffs' MPCFA and unjust enrichment claims. The Court also found that class-wide questions of fact predominate as required by Rule 23(b)(3). However, because Plaintiffs had not performed the conflicts-of-law and choice-of-law analyses required by the Eighth Circuit's opinion in In re St. Jude Medical, Inc., 425 F.3d 1116, 1120-21 (8th Cir. 2005), the Court was unable to determine whether class-wide questions of law predominate, or whether class-wide treatment is superior to other means of resolving this controversy. Plaintiffs and Allianz have provided supplemental briefing on these issues.

# III. DISCUSSION[1]

A.   **Legal Predominance under Rule 23(b)(3)**

Federal Rule of Civil Procedure 23(b)(3) requires a court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Plaintiffs contend that common questions of law predominate because the MPCFA and Minnesota's common law regarding unjust enrichment can constitutionally be applied to every class member's claims, and Minnesota choice-of-law principles support the application of Minnesota law to each class member's claims. In response, Allianz argues that the law of each class member's home state must be applied and therefore individualized questions of law predominate. Allianz contends that application of Minnesota law to the claims of non-Minnesota class members is unconstitutional, or, alternatively, Minnesota choice-of-law principles lead to the application of each class member's home state law. The Court finds that Minnesota law can constitutionally be applied, and further, that a Minnesota court would apply Minnesota law to each class member's claims. Therefore, Plaintiffs have satisfied the legal predominance requirement set forth in Rule 23(b)(3).

1.   **Constitutional Analysis**

The Constitution's Due Process Clause and Full Faith and Credit Clause "provide[] modest restrictions on the application of forum law." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985). "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate

---

[1] The legal analysis in the January 12 Order is incorporated herein by reference.

Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981).

The Court must first determine whether substantive conflicts of law exist between the MPCFA and other jurisdictions' consumer protection statutes, and between the law of unjust enrichment in Minnesota and other jurisdictions. A constitutional analysis is unnecessary if there are no substantive conflicts. Plaintiffs identify five variances among state consumer protection statutes: (1) whether a private consumer fraud action is recognized; (2) whether scienter (i.e. intent to deceive) is required; (3) whether individual reliance is required; (4) whether material omissions are prohibited; and (5) whether an insurance company's conduct is exempted from application of a state's consumer protection statutes. Second Cambronne Decl. [Docket No. 76] Ex. A. Based on these five differences, Plaintiffs have provided a summary chart showing that potential outcome-determinative conflicts exist between the MPCFA and the consumer protection statutes of thirty-one of the other forty-seven jurisdictions where Allianz sold the annuity products at issue.[2]

Allianz, however, contends that substantive differences exist between the MPCFA and consumer protection statutes in the remaining seventeen jurisdictions regarding issues such as: (1) whether a plaintiff must prove that the defendant intended others to rely on the alleged misrepresentation; (2) statute of limitations periods; (3) whether punitive or treble damages are available under a state's consumer protection statute; (4) the standard of proof; (5) the availability of or right to jury trials; and (6) whether plaintiffs may recover attorneys' fees. Boylan Decl. Ex. B.

---

[2] Allianz asserts that the annuity products involved in this lawsuit were not sold in New York, Oregon, or Washington. Boylan Decl. [Docket No. 80] Ex. B n.1.

Regarding state unjust enrichment laws, Plaintiffs assert that every jurisdiction follows the Restatement (First) of Restitution § 1 and therefore there are no conflicts. See Second Cambronne Decl. Ex. B. Allianz, however, contends that unjust enrichment law varies among jurisdictions and that the other forty-seven jurisdictions involved in this lawsuit all differ from Minnesota. See Boylan Decl. Ex. C. Because of the outcome of the choice-of-law analysis below, it is unnecessary to determine the precise number of outcome-determinative conflicts between the MPCFA and other states' consumer protection statutes, and between Minnesota unjust enrichment law and unjust enrichment law in other jurisdictions. It is sufficient to recognize that conflicts exist.

Having found outcome-determinative conflicts of law exist, the next step in the constitutional analysis is to determine whether Minnesota has a "significant contact or aggregation of contacts" with each class member's claim so that application of Minnesota law is "neither arbitrary nor fundamentally unfair." Allstate Ins. Co., 449 U.S. at 312-13. "When considering fairness in this context, an important element is the expectation of the parties." Shutts, 472 U.S. at 822.

Plaintiffs argue that Minnesota has significant contacts with each class member's claims because, *inter alia*, Allianz is incorporated and headquartered in Minnesota, Allianz created and distributed the allegedly fraudulent marketing materials from Minnesota, the policies were prepared and issued from Minnesota, Allianz received premium payments in Minnesota, and Allianz's Consumer Brochures list the address and telephone number of Allianz's Minnesota home office. These contacts are sufficient to allow application of Minnesota law to the claims of non-Minnesota class members without offending either the Due Process Clause or the Full Faith

and Credit Clause. As a Minnesota corporation, Allianz can not claim surprise by the application of Minnesota law to conduct emanating from Minnesota, since Minnesota has a "substantial interest in preventing the corporate form from becoming a shield for unfair business dealing." CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 93 (1987). To the extent that a non-Minnesota class member contemplated potential choice of law issues when she purchased her annuity, the Court finds that she would have expected either that the law of her home state, where she met with an insurance agent and completed the necessary paperwork, or the law of Minnesota, where Allianz's marketing materials were created, would govern. See Shutts, 472 U.S. at 818 (recognizing that "a particular set of facts giving rise to litigation could justify, constitutionally, the application of more than one jurisdiction's laws").

In arguing that application of Minnesota law to non-Minnesota class members' claims would violate the Due Process Clause or the Full Faith and Credit Clause, Allianz contends that the claims of out-of-state class members have a greater connection with their home states than with Minnesota. However, the Due Process Clause and Full Faith and Credit Clause are satisfied as long as Minnesota has significant contacts with an out-of-state class member's claims. See Allstate Ins. Co., 449 U.S. at 308 ("In deciding constitutional choice-of-law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, this Court has traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation."). A comparison of Minnesota's contacts with those of a non-Minnesotan's home state is only relevant to a choice-of-law analysis under Minnesota law, which the Court undertakes below.

Finally, Allianz's argument that application of Minnesota law to the claims of non-

Minnesota class members would offend the Commerce Clause by effectively making Minnesota a national regulator of sales transactions is dubious. Allianz's argument ignores the fact that much of the conduct relevant to each class member's claims emanated from Minnesota, and, as noted above, Minnesota has a substantial interest in policing the conduct of its corporations so as to "prevent[] the corporate form from becoming a shield for unfair business dealing." CTS Corp., 481 U.S. at 93.

### 2. Choice of Law

Because substantive conflicts of law exist between Minnesota law and the law of other states regarding Plaintiffs' consumer fraud and unjust enrichment claims, and because Minnesota law and the law of each annuity purchaser's home state can be constitutionally applied, a choice-of-law analysis is necessary regarding the claims of non-Minnesota class members. Federal courts sitting in diversity apply the forum state's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In analyzing choice of law, Minnesota courts consider five choice-influencing factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. Milkovich v. Saari, 203 N.W.2d 408, 412 (Minn. 1973).

#### a. Predictability of Results

The first factor, predictability of results, "addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action." Danielson v. Nat'l Supply Co., 670 N.W.2d 1, 7 (Minn. Ct. App. 2003). This factor applies "primarily to consensual transactions where the parties desire advance notice of which state law

will govern in future disputes." Medtronic, Inc. v. Advanced Bionics Corp., 630 N.W.2d 438, 454 (Minn. Ct. App. 2001). Plaintiffs argue that all class members would expect Minnesota law to apply because Allianz's annuity marketing materials list Allianz's Minnesota address and telephone number, the annuity marketing materials were approved and distributed from Allianz's Minnesota headquarters, and every policyholder mailed premium checks to Allianz in Minnesota.

Allianz argues, however, that non-Minnesota class members would not expect that Minnesota law could apply because they engage insurance agents from their home state, each annuity policy is governed by the law of the class member's home state, and Allianz's performance of those contracts is regulated by each state's insurance department. Allianz cites evidence that non-Minnesota policy owners dissatisfied with the annuity policies involved in this case invariably have contacted their home state insurance department.

However, the Court finds that both non-Minnesota class members and Allianz could have predicted that Minnesota law would govern claims based on Allianz's allegedly fraudulent activities that emanated from Minnesota. Therefore, the predictability of results factor favors application of Minnesota law.

**b.   Maintenance of Interstate and International Order**

In analyzing the second factor, the maintenance of interstate order, a court is "primarily concerned with whether the application of Minnesota law would manifest disrespect for [other states'] sovereignty or impede the interstate movement of people or goods." Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 471 (Minn. 1994). This factor "is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the

facts and issues being litigated." Myers v. Gov't Employees Ins. Co., 225 N.W.2d 238, 242 (Minn. 1974). By considering whether application of Minnesota law would negatively affect the maintenance of interstate order, "the opportunities for forum shopping may be kept within reasonable bounds." Jepson, 513 N.W.2d at 471.

As discussed above, Minnesota has significant contacts with the claims being litigated because Allianz is a Minnesota corporation that allegedly created fraudulent marketing materials in Minnesota, distributed them from Minnesota, and benefitted from the allegedly fraudulent marketing materials when it received policyholders' payments in Minnesota. Therefore, application of Minnesota law would not manifest disrespect for the sovereignty of any other state. Further, given the significant contacts each class member has with Minnesota, the Court finds that concerns of forum shopping are not implicated by the application of Minnesota law.

### c.     Simplification of the Judicial Task

Plaintiffs assert that the third factor, simplification of the judicial task, favors application of Minnesota law because it would be simpler to apply the law of one state than the law of multiple states. However, the Eighth Circuit's St. Jude decision requires an individualized choice-of-law analysis. St. Jude, 425 F.3d at 1120. When the simplification of the judicial task factor is applied to each non-Minnesota class member's claims, the factor is neutral because this Court is capable of resolving a non-Minnesota class member's claims under Minnesota law or the law of the non-resident's home state. See Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001).

### d.     Governmental Interest

Under the fourth factor, the Court must weigh the policy interests of Minnesota with

9

those of a non-Minnesota class member's home state.  See Nesladek v. Ford Motor Co., 46 F.3d 734, 739-40 (8th Cir. 1995).  On the one hand, Minnesota has a substantial interest in policing its corporations so as to "prevent[] the corporate form from becoming a shield for unfair business dealing."  CTS Corp., 481 U.S. at 93.  This interest is reflected in the MPCFA, which allows "any person" injured by conduct that violates the MPCFA to sue.  See Minn. Stat. § 8.31, subd. 3a.  On the other hand, a non-Minnesota class member's home state also has a substantial interest in providing redress for its citizens who were injured through Allianz's conduct, which included activities in the home state such as the insurance agent's sales presentation of Allianz's marketing materials, the class member's decision to purchase an Allianz annuity product, the signing of the annuity contract, and the injury to the class member.  Both parties present sound policy interest arguments.

On balance, the Court finds that the governmental interest factor favors application of Minnesota law to an out-of-state class member's claims.  By allowing "any person" to sue under the MPCFA, the Minnesota legislature has evinced a strong policy of providing redress for fraudulent business practices that occur within Minnesota's borders, regardless of where a consumer's injury occurs.  Similarly, application of Minnesota's law of unjust enrichment in this case serves Minnesota's policy of preventing a corporation from using Minnesota as a shield to engage in unfair business practices that result in the corporation's unjust enrichment.  Although other states have an interest in applying their own laws, their interest is not so strong so as to prevent their citizens from benefitting from Minnesota's willingness to provide statutory and common law remedies for fraudulent conduct emanating from Minnesota.  See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007 (9th Cir. 2001) (dismissing as "pure fancy" the

argument that a state would seek to restrict its citizens from recovery that others could obtain under another state's law).

### e. Better Rule of Law

Minnesota courts generally have not emphasized the fifth factor, the better rule of law. Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 96 (Minn. 2000). This Court therefore attaches no weight to this factor. Since the five choice-influencing factors on balance favor the application of Minnesota law to every class member's claims, the Court finds that common questions of law predominate as required by Federal Rule of Civil Procedure Rule 23(b)(3).

## B. Superiority under Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) also requires a court to find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) states that matters pertinent to the superiority analysis include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs assert that the size of each individual class member's loss will be relatively modest, and therefore requiring each class member to bring an individual lawsuit against Allianz for damages is not economically feasible. As a result, Plaintiffs argue a class action is necessary

so that class members can obtain effective redress for their injuries. Allianz contends that individualized factual and legal issues make a class action unmanageable. However, the Court has found that common questions of fact and law predominate over individualized questions, and therefore class-wide methods of proof are appropriate. At this point in the litigation, there is no reason to believe that Plaintiffs' proposed class action will be unmanageable.

At least three class actions have been certified regarding Allianz's annuity products. See Negrete v. Allianz Life Ins. Co. of N. Am., Civ. No. 05-6838 (C.D. Cal. Nov. 21, 2006); Iorio v. Asset Mktg., Inc., Civ. No. 05-633 (S.D. Cal. July 25, 2006); Castello v. Allianz Life Ins. Co. of N. Am., Civ. No. 03-20405 (Minn. Dist. Ct. Sept. 1, 2005). However, these cases involve different combinations of individuals and annuity products than those at issue in the instant case.[3] Having considered the factors in Rule 23(b)(3) and the parties' arguments, the Court finds that the proposed class action is the superior means for resolving the instant controversy. Since the requirements of Federal Rule of Civil Procedure 23 have been satisfied, Plaintiffs' proposed class is certified.

---

[3] Additionally, on January 9, 2007, the Minnesota Attorney General initiated litigation against Allianz on behalf of senior citizens of Minnesota. See State of Minn. v. Allianz Life Ins. Co. of N. Am., Civ. No. 07-581 (Minn. Dist. Ct.). Neither Plaintiffs nor Allianz has addressed whether that litigation affects the superiority analysis.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Renewed Motion for Class Certification [Docket No. 75] is

    **GRANTED**.  A class is certified as:

    All individuals who from February 9, 2000 to the present purchased one of the following two-tiered annuities from Allianz Life Insurance Company of North America: BonusMaxxx, BonusMaxxx Elite, BonusDex, BonusDex Elite, 10% Bonus PowerDex Elite, MasterDex 10, and the InfiniDex 10.  The Class excludes all persons who purchased the above-listed Annuities from Allianz while they were California residents and when they were 65 or older;

2. Linda L. Mooney and Lieselotte W. Thorpe are **APPOINTED** as class

    representatives; and

3. The law firms of Chestnut & Cambronne, P.A., Page Perry, LLC, and The

    Nygaard Law Firm are **APPOINTED** as class counsel.


                                                              BY THE COURT:


                                                                   s/Ann D. Montgomery    
                                                              ANN D. MONTGOMERY
                                                              U.S. DISTRICT JUDGE

Dated:  May 10, 2007.