**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Linda L. Mooney and Lieselotte W. Thorpe, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Allianz Life Insurance Company of North America,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 06-545 ADM/FLN

---

Karl L. Cambronne, Esq., Chestnut & Cambronne, P.A., Minneapolis, MN; Jason R. Doss, Esq., Page Perry, LLC, Atlanta, GA; Diane A. Nygaard, Esq., and Jason M. Kueser, Esq., The Nygaard Law Firm, Leawood, KS, on behalf of Plaintiffs.

James F. Jorden, Esq., Denise A. Fee, Esq., and Roland C. Goss, Esq., Jorden Burt, LLP, Washington, DC; Arthur G. Boylan, Esq., Leonard, Street and Deinard, P.A., Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

Before the Court is Defendant Allianz Life Insurance Company of North America's ("Allianz") Motion for Summary Judgment [Docket No. 245] and Second Motion to Decertify the Class [Docket No. 238]. For the reasons set forth below, Allianz's Motion for Summary Judgment is denied in part and granted in part and the Second Motion to Decertify the Class is denied.

## II. BACKGROUND

The facts of this matter are recited in the Court's January 12, 2007 and May 10, 2007 Orders [Docket Nos. 70 and 82] and will not be repeated here. In short, Plaintiffs Linda L. Mooney ("Mooney") and Lieselotte W. Thorpe ("Thorpe") allege that Allianz fraudulently

marketed certain annuity products as providing an "up-front" or "immediate" bonus, knowing that the bonus was not available until years after the products were purchased. Plaintiffs assert claims of consumer fraud under the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. §§ 325F.68-.70, and unjust enrichment under Minnesota common law.

On May 10, 2007, the Court certified this matter as a class action under Federal Rule of Civil Procedure 23(b)(3). The class is defined as:

> All individuals who from February 9, 2000, to the present purchased one of the following two-tiered annuities from Allianz Life Insurance Company of North America: BonusMaxxx, BonusMaxxx Elite, BonusDex, BonusDex Elite, 10% Bonus PowerDex Elite, MasterDex 10, and the InfiniDex 10 ("Annuities"). The Class excludes all persons who purchased the above-listed Annuities from Allianz while they were California residents and when they were 65 or older.

May 10, 2007 Order at 2. In certifying the class under Rule 23(b)(3), the Court determined that questions of law or fact common to the class members predominate over individual issues, and that a class action is the superior method of adjudicating the MPCFA and unjust-enrichment claims. On July 9, 2007, the Eighth Circuit denied Allianz's petition for interlocutory review of class certification [Docket No. 87].

On May 20, 2008, Allianz filed a Motion to Decertify the Class [Doc. No. 109], arguing the ruling of the Eighth Circuit in In re St. Jude Medical, Inc., 522 F.3d 836 (8th Cir. 2008) ("St. Jude II"),[1] compelled the conclusion that individual issues predominate. The Court found St. Jude II distinguishable and determined that the facts of this case demonstrate that common issues continue to predominate over individual issues. July 28, 2008, Order at 5, 6. The parties have now completed discovery.

[1] The Eighth Circuit issued an earlier decision in the same case in 2005. In re St. Jude Med., Inc., 425 F.3d 1116 (8th Cir. 2005).

## III. DISCUSSION

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

#### 1. Minnesota Prevention of Consumer Fraud Act

The MPCFA prohibits a corporation from using "any fraud, false promise, misrepresentation, misleading statement or deceptive practice . . . in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1. Typically, the state attorney general enforces the MPCFA. Minn. Stat. § 325F.70, subd. 1. However, the Minnesota Private Attorney General Act confers a private right of action on "any person injured by a violation of" the MPCFA. Minn. Stat. § 8.31, subds. 1, 3a. When a plaintiff seeks damages for a violation of the MPCFA under § 8.31, she must demonstrate that (1) the defendant made a false or misleading statement, (2) the

false or misleading statement caused damage to the plaintiff, and (3) the plaintiff seeks to secure a public benefit. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 11, 13 (Minn. 2001). In Group Health, the Minnesota Supreme Court held that while it is "not necessary to plead individual consumer reliance on the defendant's wrongful conduct to state a claim for damages," in some cases, "it will be necessary to prove reliance on [the defendant's] statements or conduct to satisfy the causation requirement." 621 N.W.2d at 13. The court further stated "where, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." Id.

**a. Misrepresentation**

Allianz argues that the written materials it provided with its annuities were not misleading or deceptive because they adequately explain how the bonus features work. It maintains that the bonus is in fact "up-front" and "immediate" because it is immediately credited to annuitization value and, thus, enhances the power of compounding. Both plaintiffs, however, have testified that they felt the information in the brochure was confusing and misleading. Mooney testified that she focused on the 10% bonus language in the brochure and that the qualifying language was "very confusing language that I'm not familiar with." Doss Decl. [Docket No. 266] Ex. 3 (Mooney Depo.) at 65. She also testified that she "tried to read [the brochure]," but "the language was very confusing." Id. at 93. Thorpe also testified that she thought the brochure was misleading. She testified that when the brochure was presented to her it was misleading and that, "I didn't understand the product." Doss Decl., Ex. 4 (Thorpe Depo.)

at 76. The evidence demonstrates that there is a question of fact as to whether Plaintiffs were misled by the brochure making summary judgment inappropriate on this issue.

**b. Damages**

Allianz next argues that Plaintiffs have not experienced damage because the marketing materials were not the cause of any injury to Plaintiffs. In support of its argument that Plaintiffs were not mislead by the marketing materials, Allianz claims that Plaintiffs "admitted that they did not in fact read the consumer brochures," which would foreclose the possibility that the alleged misrepresentations caused them any damage. Def.'s Mem. in Supp. of Mot. for Summ. J. [Docket No.247] at 19. This argument fails because evidence in the record supports Plaintiffs' claims that they read the brochure and that the alleged misrepresentations in the brochure caused them to experience damage. Mooney testified multiple times in her deposition that she read the brochure: "I remember reading . . . that the surrender charges would be offset"; "I remember reading, seeing a pamphlet that repeatedly promised a ten percent bonus"; "I remember looking through this. I remember focusing on the ten percent bonus." Mooney Depo at 36, 53, 54.

Although Thorpe's testimony demonstrates that she did not read the brochure herself, it establishes that it was read to her by her agent. Thorpe, who is not a native English speaker, testified that while she did not read the brochure at the meeting, her agent read the brochure to her. Thorpe Depo. at 68. She remembers seeing him read through the brochure one page at a time and that the agent would read and explain the brochure. Id. at 68-69. Moreover, Thorpe's agent, Jeffery W. Goldfine, signed an Statement Of Understanding ("SOU"), acknowledging that his statements did not differ from the disclosure form. See Applebaum Decl. Ex. F [Docket No. 52] at 43, 67-69, 73-75. Construing this testimony in the light most favorable to Thorpe, the

Court finds that a jury could determine she was mislead by the brochure.

Allianz also argues that Plaintiffs have not experienced damage because (1) Thorpe's financial loss occurred after the commencement of the suit when she surrendered her annuity in an effort to manufacture a loss and (2) Mooney still has her annuity which has had substantial gain in value. Allianz cites no authority in support of its argument that Thorpe's surrendering of her policy to bring suit bars her claim. It also has presented no evidence that the motivation for the surrender of her policy was to create a damage claim. The facts demonstrate she was damaged in the form of the surrender fee. Mooney likewise has experienced damage because she was not credited the 10% up-front bonus to the cash value of her annuity, which she alleges she was misled to believe would occur. Were a jury to believe that Allianz had represented this bonus as Mooney alleges, she would be entitled to recover damages. Plaintiffs have presented sufficient evidence to defeat summary judgment on the issue of damages.

**c. Public Benefit**

Under the Minnesota private Attorney General statute, Plaintiffs must demonstrate that the claim is a benefit to the public. Minn. Stat. § 8.31, subd. 3a. Courts will not find a public benefit when a plaintiff is "defrauded in a single one-on-one transaction in which the fraudulent misrepresentation . . . was made only to [the plaintiff]." Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000). Also, Plaintiffs must do more than merely seek damages for a large group of individuals. Schaaf v. Residential Funding Corp., Civ. No. 05-1319, 2006 WL 2506974 at * 16 (D. Minn. Aug. 29, 2006). Allianz argues that like Schaaf the Plaintiffs here merely seek damages for themselves. This characterization of alleged harm, however, belies the widespread nature of Allianz's alleged misrepresentation. Plaintiffs allege, and Allianz does not dispute, that

it has sold well over 300,000 annuity policies under circumstances alleged to include the misrepresentations at issue in this case. The estimated value of these annuities is well into the billions of dollars. See Doss Decl., Ex. 40. It is disingenuous to suggest that were a jury to determine that Allianz had misrepresented its annuities in its brochures, the benefit from forcing Allianz to publicly admit its wrong and then correct it would not benefit the general public.

**2. Unjust Enrichment**

Allianz argues that Plaintiffs' claim of unjust enrichment fails because (1) its conduct was not the equivalent of illegal behavior and (2) there is an adequate remedy at law. Plaintiffs did not respond to these argument in their opposition brief but stated during oral argument that these damages mirror the MPCFA claim. Because questions of fact remain as to whether Allianz has engaged in illegal behavior, the first argument is unavailing. However, Plaintiffs have an adequate remedy at law in the form of the MPCFA claim. A damage award would be duplicative of the MPCFA claim. When Plaintiffs have an adequate remedy at law, summary judgment on an equitable claim is appropriate. See Service Master of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 305 (Minn. 1996); see also Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). For this reason, Allianz is entitled to summary judgment on the unjust enrichment claim.

**B. Decertification**

Allianz argues that because discovery has produced evidence demonstrating that individual issues predominate over class issues the class should be decertified. It relies heavily on St. Jude II for the proposition that difficulties of proof on the causation and reliance elements of the MPCFA claim require decertification. St. Jude II dealt with the intersection of a MPCFA

and Rule 23 certification. Allianz cites the language in St. Jude II that, "Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment."[2] 522 F.3d at 838. Often but not always an unsuitable case. The Eighth Circuit found that "[w]hatever Group Health means about the need for these plaintiffs to present direct evidence of individual reliance, it does not eliminate the right of a defendant to present evidence negating a plaintiff's direct or circumstantial showing of causation and reliance." Id. at 840. While the Eighth Circuit has not addressed what standard a district court should use to weigh the evidence the parties have presented in deciding whether common or individual issues predominate, Allianz directs the Court to the "preponderance of the evidence" standard used by other circuits. See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008) (applying the preponderance of the evidence standard in a securities fraud case); see also In re Hydrogen Peroxide Antitrust Litigation, No. 07-1689, 2008 WL 5411562, at * 1 (3d Cir. January, 16, 2009) (applying the preponderance of the evidence standard in an antitrust action). Plaintiffs have not disputed that this standard should apply. Therefore, the Court will determine whether a preponderance of the evidence suggests that class issues will predominate over individual issues.

Subsequent to the prior decertification ruling, the parties have completed targeted

---

[2] Allianz seems to suggest that St. Jude II stands for the proposition that MPCFA cases are never appropriate for class treatment. This interpretation was not the intent of the Eighth Circuit. To so hold would eviscerate the most logical vehicle to achieve the purpose of the MPCFA–namely to expose and rectify fraud. Moreover, Allianz's suggested reading would increase the standard of proof in MPCFA cases over the level determined by the Minnesota Supreme Court in Group Health, and would violate principles of comity.

depositions of nineteen absent class members. Allianz selected the nineteen class members, who are not representative of the class.[3] Allianz argues that the testimony of these nineteen absent class members demonstrates that the decision-making process for each individual was highly individualized and prohibits class certification on the issues of causation and reliance. To support this contention, Allianz has presented a summary of the deposition testimony of the nineteen absent class members.[4] The summary indicates that 26% of the deponents testified they did not read any document, including the brochure; 31% did not recall or did not mention receiving the brochure; two did not recall any mention of a bonus during the sales process; 84% relied on what their agents told them in deciding to purchase an annuity; and a vast majority purchased the annuity not only for the bonus but also for a variety of other reasons. Goss Decl. Ex. A.

Plaintiffs have presented their own summary of the deposition testimony that somewhat contradicts Allianz's characterization. According to Plaintiffs, at least 84% of the deponents would not have purchased the annuity if the bonus had not been available (the remaining 16% were not asked this question), 74% specifically cited the bonus as a reason for their purchase, and only four definitively testified that they did not read the brochure. Bores Decl. Ex. 20. Plaintiffs also submit the expert report of Dr. Ran Kivetz who conducted a double blind study of

---

[3] Only 9.4% of class members eligible have annuitized, but 44% of the deponents have done so. Cobb Decl. [Doc. No. 267] at 16; Bores Decl., Ex. 20. Also, roughly 45% of the class consists of senior citizens, but only 16% of the deponents were 65 or older when they purchased their first Allianz annuity. Kivetz Report [Doc. No. 269] ¶ 19; Bores Decl., Ex. 20.

[4] Both parties have provided the Court with summaries of the deposition testimony that organize the relevant portions by certain factors. See Goss Decl. [Doc. No. 241] Ex. A; Bores Decl. Ex. 20. Citations will be to these summaries to facilitate the analysis.

over 300 Allianz annuity purchasers. Dr. Kivetz concludes the bonus was directly mentioned by a "large majority of the respondents as an important factor . . . influencing their decision to buy the annuities," and most respondents "were misled with regard[] to the meaning of the conditions under which they would receive the 'bonus.'" Kivetz Report ¶ 14.

In Group Health, the Minnesota Supreme Court held that Plaintiffs need not prove that the misrepresentation was the sole or primary cause of damages but merely "must demonstrate that defendant['s] conduct had some impact on [the cause] of their damages." 612 N.W.2d at 14. Additionally, proof of individual reliance is not required because such a requirement "would reinstate the strict common law reliance standard that we have concluded the legislature meant to lower for statutory actions." Id. Instead, when Plaintiffs' damages are caused "by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendant['s] products." Id. In other words, Plaintiffs must prove that the alleged misrepresentation was *a* cause of their damages and that there was *some* reliance.

Applying this standard to the evidence in the record, the Court finds that a preponderance of the evidence supports a finding that common issues predominate over individual issues. While Allianz has presented evidence that class members may have evaluated several factors in choosing to purchase an annuity, its own summary of the evidence as well as Dr. Kivetz's report support a finding that for most of the class the promise of a bonus was a cause of the decision to purchase an annuity. Over 70% of the deponents, a cherry-picked group that appears to be a favorable cross-section for Allianz, indicate that the bonus played a factor. The number increases to 100% when deponents were asked if they would not have chosen the annuity if the

bonus had not been offered. That percentage is supported by the findings in the more representative sample surveyed in Dr. Kivetz's report. Plaintiffs are not required to prove the extent to which the alleged misrepresentation caused them to purchase the annuity, merely that the misrepresentation was a cause, and, in that respect, the preponderance of the evidence indicates that the common issue of whether the misrepresentation played a factor in the decision predominates for most class members.

The same conclusion applies to the reliance issue. Allianz has presented evidence that some Plaintiffs did not read the brochure and therefore could not rely on any misrepresentation in the brochure. Only four of the deponents affirmatively testified that they did not read the brochure. Juxtaposed against this testimony are Dr. Kivetz's findings as well as the testimony of the deponents that they read the brochure or were unsure if they had done so.

An additional factor weighs in favor of Plaintiffs. Allianz cites testimony from the deponents that many of them relied on the representations of agents in making their decisions. Allianz required all agents to sign a SOU stating that "I have presented and provided a signed copy of this disclosure to the owner. I have not made statements that differ from the disclosure form, and no promises or assurances have been made about the future values of the policy." Doss Decl. [Docket No. 47] Ex. 21 at 2. Allianz admits that the purpose of these SOUs was to deflect some of the potential risk of litigation if an agent misrepresented an aspect of the annuity. See Doss Decl. [Docket No. 266] Ex. 20 (Negrete Depo.) at 549-551, 553. Therefore, even if some class members relied on an agent as opposed to the brochure itself, those class members would have been exposed to the same alleged misrepresentation when the agent presented that misrepresentation from the brochure. For these reasons, the preponderance of the evidence is

that common issues predominate and decertification is not appropriate.

Finally, this case has many facts which distinguish it from St. Jude II. In St. Jude II the Eighth Circuit found that the defendant had "presented evidence that a number of implant patients did not receive *any* material representation about [the alleged offending device]." 522 F.3d at 838. In this case, almost every class member received the misrepresentation either through the brochure itself or through an agent who orally conveyed the information from the brochure to the class members. Both named Plaintiffs received this information, and 80% of a class sample skewed favorably toward Allianz testified that they may have received the misrepresentation from the brochure. Additionally, the court in St. Jude II determined that the misrepresentations alleged against the defendant "undoubtably will vary by individual physician." Id. at 839. By contrast, the vast majority of class members here will have relied on a standard set of alleged misrepresentations printed in the brochure. Third, the nature of the misrepresentation in St. Jude II involved a complex medical device as opposed to a misrepresentation involving a relatively straight-forward statement of an "up-front" and "immediate" bonus. Fourth, St. Jude II included evidence that almost all of the named plaintiffs were exposed to the misrepresentation in different ways and through different language. Even Allianz's strongest evidence suggests that a majority, if not a vast majority, of the class was exposed to and relied on the alleged misrepresentations. Fifth, individual issues were expected to predominate during the remedial phase of the proposed class action in St. Jude II because it required medical monitoring. The remedial phase in this action is not so individualized and supports a finding that class issues predominate. Finally, the court in St. Jude II held that "[w]hether a certain published representation by [the defendant] was materially false may be

amenable to common resolution." Id. at 841. The situation the St. Jude II court anticipated as an exception is the factual context of this case.

In sum, the Court finds common issues continue to predominate over individual issues. Therefore, Allianz's Second Motion to Decertify the Class is denied.[5]

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Allianz Life Insurance Company of North America's Motion for Summary Judgment [Docket No. 245] is **DENIED IN PART** and **GRANTED IN PART**, and Second Motion to Decertify the Class [Docket No. 238] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 26, 2009.

---

[5] After arguments had been submitted on this matter, both parties notified the Court of additional relevant authority. The case cited by Allianz is a non-binding decision from within this district that involves a claim under the Washington Consumer Protection Act rather than the MPCFA. Avritt v. Reliastar Life Ins. Co., No. 07-1817 (D. Minn. Feb. 23, 2009). In addition, the alleged misrepresentations supporting the claim in that case were founded on generic, nonspecific assertions of "'illegality, unfairness and deceptiveness,'" whereas, the alleged misrepresentations here are of a quite specific nature and the majority of the class members received substantially the same misrepresentation. Id. at *10. The case cited by Mooney involved a claim under the MPCFA and relied on this Court's July 28, 2008 Order in reaching the conclusion that the facts of that case were distinguishable from St. Jude II and warranted class certification. In re FedEx Ground Package Sys., Inc., Employment Practices Litig., No. 3-05-CV-00533, 3:05-MD-527, 2008 WL 5263376, at *3-4 (N.D. Ind. Dec. 16, 2008).